## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CALVIN MERRITTE, # R-53322,      )
                                      )
           Plaintiff,      )
                                      )
   vs.                    )      Case No. 12-cv-00263-JPG-PMF
                                      )
C/O KESSELL, *et. al.*,      )
                                      )
        Defendants.      )

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's Motions for Preliminary Injunction, Motion for Temporary Restraining Order (Docs. 3, 8, & 15).  The injunctive relief requested was protective measures to prohibit Defendants from being assigned to work around the Plaintiff and retaliating against him and also,  ". . . transfer me from Lawrence Correctional Center." (Doc. 3, pg 2; Doc. 8, pg 1; and Doc. 15, pages 1 & 3).

I. **Background**.

Plaintiff filed a Complaint (Doc. 1) seeking recovery for alleged civil rights violations under 42 U.S.C. § 1983 against C/O Kessel, C/O Gangloff, C/O J. Freeman, C/O Breeden, C/O Tate, and Warden Marc Hodge.  In his Complaint, Plaintiff alleges retaliation and harassment for filing grievances in violation of his 1st Amendment rights and failure to protect in violation of his 8th Amendment rights.

Thereafter, Plaintiff filed an Amended Complaint (Doc. 7) adding another Plaintiff (Regis Higgins) and a Motion for Preliminary Injunction (Doc. 8) that included Plaintiff Higgins. The Court entered an Order (Doc. 11) directing Plaintiff Higgins to indicate to the Court whether he desired to continue as a Plaintiff in this action.  However, prior to receiving a response from

Plaintiff Higgins, Plaintiff Merritte Motioned to Sever (Doc. 13) and filed a Motion to Amend/Correct his Complaint (Doc. 14).  He also filed an Amended Motion for Preliminary Injunction (Doc. 15).   The Motion to Sever and the Motion to Amend were granted and Plaintiff filed his Second Amended Complaint (Doc. 17).

The Second Amended Complaint underwent 28 U.S.C. § 1915A(b)(1)) review  (Doc. 24) and the Court found that the plaintiff had plead sufficient grounds for a preliminary injunction and scheduled a hearing as soon as practicable.

The evidentiary hearing was held on October 22, 2012 (Doc. 43) before Magistrate Judge Frazier.  The Plaintiff attended the hearing via video-conference and testified.  Thereafter, Magistrate Judge Frazier issued a Report and Recommendation (Doc. 42) recommending denial of the preliminary injunction on the basis that the Plaintiff failed to identify a specific threat (who, when, and how) and therefore, Plaintiff had not demonstrated a likelihood of success on the merit and that the plaintiff did not establish he would suffer irreparable harm.  Plaintiff filed an Objection to the Report and Recommendation (Doc. 45) which included six affidavits from other prisoners.

The District Judge reviewed the Report and Recommendation and the Plaintiff's objections.  Although the District Judge rejected the reasoning of the R & R, Plaintiff's Motion for injunctive relief was denied on other grounds.  Plaintiff filed an interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).  The United States Court of Appeals for the Seventh Circuit held that the District Judge did not fully address Plaintiff's claims with regard to his fear of serious harm from other inmates.  As such, the Appellate Court vacated and remanded.

Upon remand, the District Judge held an evidentiary hearing which the Plaintiff attended in person.  The Plaintiff was permitted five witnesses that appeared via video conference and

were subject to examination by the Plaintiff and by counsel for the Defendants.  Finally, Plaintiff

was granted permission and filed Supplemental Arguments and Exhibits (Doc. 201).

In order to obtain emergency injunctive relief, the plaintiff must support his motion with

evidence to show that (1) he has no adequate remedy at law; (2) will suffer irreparable harm if

the relief is not granted; (3) the irreparable harm he would suffer outweighs the irreparable harm

defendants would suffer from an injunction; (4) he has some likelihood of success on the merits

of his case; and (5) the injunction would not frustrate the public interest. *Palmer v. City of

Chicago*, 755 F.2d 560, 576 (7th Cir.1985). The plaintiff must satisfy each of these elements to

prevail.  The purpose of a preliminary injunction is to preserve the status quo pending a final

hearing on the merits of the case. *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th

Cir. 1980) "A preliminary injunction is an extraordinary remedy that is only granted where there

is a clear showing of need." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir.1999).    Further, a

section of the PLRA entitled "Requirements for Relief," provides:

> Preliminary injunctive relief must be narrowly drawn, extend no further than
> necessary to correct the harm the court finds requires preliminary relief, and be
> the least intrusive means necessary to correct that harm. The court shall give
> substantial weight to any adverse impact on public safety or the operation of a
> criminal justice system caused by the preliminary relief and shall respect the
> principles of comity . . . in tailoring any preliminary relief. 18 U.S.C. § 3626(a)(2).

As stated above, Plaintiff's request for injunctive relief was for protective measures to

prohibit Defendants from being assigned to work around the Plaintiff and retaliating against him

and also a transfer from Lawrence Correctional Center.  At the hearing, Plaintiff testified:

> THE COURT:  Now, when you filed this you were at
> Lawrence -- Lawrenceville, is that correct?
>
> MR. MERRITTE: Yes.

THE COURT: And now you are housed at –

MR. MERRITTE: Pinckneyville Correctional Center.   (Transcript of hearing, Page 4)

THE COURT: When were you transferred to Pinckneyville?

MR. MERRITTE: I was transferred to Pinckneyville in 2014, October 8th.
(Hearing Transcript, Page 40)

Therefore, Plaintiff's injunctive relief request to be transferred from Lawrence Correctional Center is moot.  Further, the named defendants[1] in this matter, with regard to the allegations of retaliation and harassment, are located at Lawrence Correctional Center.  As such, Plaintiff's injunctive relief request for protective measures to prohibit Defendants from being assigned to work around the Plaintiff and retaliating against him is moot.

However, at the hearing, Plaintiff stated that the transfer to Pinckneyville did not alleviate the threat to his well-being.  The Plaintiff testified that he could be, "assaulted any day down there in Pinckneyville Correctional Center."  (Hearing Transcript, page 67).  Plaintiff states that the threat is based on a prior attack by Oscar Rodriguez (who is gang related according to the Plaintiff) and other individuals from that gang that are housed in Pinckneyville.

The Plaintiff contends that, due to filing the grievances at Lawrence, Defendants labeled him a "stool pigeon" and that it "carried over to Pinckneyville."  (Hearing Transcript, page 41). He further argued that it is a policy of the Illinois Department of Corrections to house inmates with other inmates that they have a conflict with and that the inmates are required to get into a physical altercation before they are separated.   As such, there is the threat that he will be housed with a member of this gang as he was in Lawrence.  (Hearing Transcript, page 45).

---

[1] At the hearing, Plaintiff made an oral motion to substitute Warden Speller (warden at Pinckneyville) for Warden Hodge (warden at Lawrence) that was granted to ensure the individual with authority to carry out injunctive relief at the facility in which plaintiff is currently housed was a proper party to this action.

The Court explored this contention:

THE COURT: Since you have been in
Pinckneyville what evidence do you have you have been
threatened?

MR. MERRITTE: Oh, no, I wasn't threatened
in Pinckneyville.  (page 46)

MR. MERRITTE: The situation at
Pinckneyville is I have been approached by inmates I was
at Lawrence with. Because when inmates at Lawrence get
disciplined normally they send you -- if they transfer
you, they transfer you to Pinckneyville. They like
sister institutions. Both of them disciplinary
institutions. And a lot of people from Lawrence is down
there in Pinckneyville Correctional Center. I have been
approached in the healthcare unit by a guy that was at
Lawrence with me. He remembered me from down there. And
he remembered the incident and he asked me was I okay
about being attacked and all that, and I have seen other
guys who I know from Lawrence, and I don't know what part
of -- I don't know who's going to attack me, when they
are going to attack me or how they are going to attack
me. (Page 48)

The Plaintiff's witnesses testified as follows:

Inmate Truvon Flagg testified that he is currently housed at Pinckneyville Correction

Center and that he is familiar with the prison's policy regarding a conflict with another inmate.

Mr. Flagg stated that he had a conflict with another inmate and reported it to the prison staff and

no action was taken.  He said he was informed by the prison staff that nothing could be done

unless, "me and the other inmate fought."  (HearingTranscript, page 12).  This occurred more

than 10 times.  It is his understanding that an inmate must have a physical altercation in order to

be removed from the vicinity that they are in.  He further testified that he would be discipline for

getting into the altercation, even after he had previously filed grievances requesting removal

from the other inmate, and that the prison staff has retaliated against him for reporting conflicts.

Inmate Dennis Lyles[2] testified that he is currently housed at Lawrence Correctional Center and that while the Plaintiff was housed at Lawrence, he received a kite[3] was on one of the breakfast tray.  The kite stated that some guys were putting a hit out on the Plaintiff, "something about some guys trying to stab him." (Hearing Transcript, page 20).  Mr. Lyles stated it had something about, "the Folks and the Kings.[4]" *Id.*  Mr. Lyles also testified that the prison staff at Lawrence "picked" on the Plaintiff, "all the time" by shaking down his cell.  *Id.*  However, Mr. Lyles could not recall a specific prison staff that engaged in the shake downs and he did not personally witness any IDOC prisoners seeking to carry out the message that was in the kite.  He could only testify that he heard, "a few guys was talking about it."  (Hearing Transcript, page 21).

Inmate Omar Smith testified that he is currently housed at Lawrence Correctional Center and had previously been housed there with the Plaintiff in Unit 5-C, Lower 3.  In August of 2014, he was on the wing waiting on a visit when he observed a fight between the Plaintiff and his cellmate.  Mr. Smith stated that Plaintiff's cellmate was an individual by the name of Oscar and that Oscar was gang related – although he could not recall what gang.  He personally observed the Plaintiff holding Oscar and requesting Mr. Smith to get the C/O[5] and inform him of the fight.

After Mr. Smith informed the C/O, he stated that five or six officers came and asked Plaintiff and his cellmate to "come up[6]."  Mr. Smith further testified that after three direct orders to cuff up, "they basically did a chuck hold."  He testified that, "After they maced they opened

---

[2] Inmate Lyles was the only witness who previously provided an affidavit that was attached to Plaintiff's Ojbections to the R & R.
[3] A kite is a letter written from one person to another.  (Transcript, page 20)
[4] The Folks and the Kings are gangs according to the general testimony.
[5] Correctional Officer (C/O)
[6] It appears from the content to the testimony that "come up" means to approach the bars and be handcuffed.

the door you all, they fell out - - you all fell out of the cell and they cuffed you all up."  (Hearing Transcript, page 27).

Inmate Michael Johnson testified that he is currently housed at Lawrence Correctional Center and has been housed at several IDOC locations.  At each of these locations, Mr. Johnson testified that he has had problems with other inmates and filed reports which ended up with Mr. Johnson being placed in segregation.  Mr. Johnson further testified that some of these problems escalated into physical altercations and specifically, one altercation at Big Muddy Correctional Center in which he advised that a certain inmate should not be celled with him, but the staff still placed the inmate in Mr. Johnson's cell.  That inmate attacked Mr. Johnson and although they were then separated, Mr. Johnson was disciplined for being attacked.  Mr. Johnson testified that the same type of issue occurred when he was at Pinckneyville.  However, he testified that he does not believe that inmates are required to get into a physical altercation in order to be separated.  (Hearing Transcript, pages 30-31).

Inmate Darren Robinson testified that he is currently housed at Pinckneyville Correctional Center and at some time in October or November of 2014, he was in segregation with the Plaintiff.  Mr. Robinson testified that while he was in segregation, he was put in a cell with, "a guy that wanted to try to harm me."  (Hearing Transcript, page 57).  He stated that he filed multiple grievances and informed the C/O's on every shift, but was not moved until he went on a suicide watch.  Mr. Robinson testified that he went on the suicide watch, "Because I had to get out the cell with the guy somehow before he tried to harm me."  (Hearing Transcript, page 58).  He further stated that it is his belief that an inmate has to be attacked in order to get moved or for any type of action to be taken.

Only one witness, Omar Smith, had personal knowledge of an actual physical altercation between the Plaintiff and another inmate and one witness, Dennis Lyles, testified to a threat against the Plaintiff.  Both of these witnesses' testimony was in regard to incidents that occurred at Lawrence Correctional Center.   Since the Plaintiff had already been transferred out of Lawrence, the Court inquired into the type of relief that the Plaintiff was seeking.  The Plaintiff testified as follows:

> MR. MERRITTE:  My request for relief is to
> be placed in an institution where no deaths have occurred
> in the last fiscal year statistics and it's a minimum
> level of inmate -- on inmate assaults.
> (Hearing transcript, Page 49)

In support of this request, Plaintiff provided the IDOC statistical data[7] on prison inmate deaths and inmate assaults he received through a Freedom of Information Request.  However, the inmate death statistics do not indicate whether the inmate died from natural causes or from other means, such as an assault by another inmate.  The inmate assault data is clearer in that it is specific to inmate-on-inmate assaults.

The preliminary injunctive relief requested is overly broad and not narrowly drawn.  If the Court granted Plaintiff's relief for a transfer from his current location (where only one death and eight assaults have occurred in the last fiscal year), to a location such as Danville, (where zero deaths and two assaults have occurred), would the injunction require that the Plaintiff be move again if an inmate at Danville were to suffer a heart attack and die shortly after the Plaintiff arrived?  Also, what would define "minimum level of inmate assaults?"  The data provided indicates the number of assaults, but not the number of inmates at that location.  As such, 25

---

[7] Illinois Department of Correction, Adult Correctional Center Operational Statistics, Fiscal year 2013 (Through April 2013)

assaults in an institution of 200 would be a higher probability of injury than 25 assaults in a facility of 2,000 inmates.

Further, if the Plaintiff is transferred to a facility which statistically indicates zero deaths and a minimum level of inmate assaults, but a large percentage of the prison population at that location are members of these gangs, such injunctive relief would actually place the Plaintiff in a position of increased danger.  As such, Plaintiff's request for relief is overly board and not narrowly drawn.

Finally, Plaintiff has no likelihood of success on the merits of his case with regard to Pinckneyville Correctional Center as none of the named defendants have contact with that facility and by his own testimony, he has not been threaten there.  Plaintiff's cause of action lies solely with the named defendants at Lawrence Correctional Center.

The issues having been heard, and based upon the above, Plaintiff's Motions for Preliminary Injunction, Motion for Temporary Restraining Order (Docs. 3, 8, & 15) are DENIED.

**IT IS SO ORDERED.**

**DATED:**  4/16/2015

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**