IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALVIN MERRITTE, # R-53322, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12-cv-00263-JPG-PMF |
| | ) |
| C/O KESSELL, *et. al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("R & R") (Doc. 141) of Magistrate Judge Philip M. Frazier with regard to Defendants Freeman, Hodge, and Tate's Motion for Summary Judgment (Doc. 114). The Plaintiff filed Objections to the R & R (Doc. 142), Supplemental Objections (Doc. 144), and Second Supplemental Objection (Doc. 152). Defendants filed a Motion (Doc. 151) to Strike Plaintiff's Supplemental Objection (144) and Plaintiff filed a response to the Motion to Strike (Doc. 155).

For case management purposes, it is noted that Plaintiff has two pending Motions for Service of Process at Government Expense (Docs. 159 & 161). Both Motions are **DENIED** as moot as the Court has previously ruled on Plaintiff's Motion for Service at Government Expense with regard to Plaintiff's Amended Complaint and witnesses for the preliminary injunction hearing.

The Court will first address Defendant's Motion to Strike (Doc. 151). The Defendants' Motion requests that the Plaintiff's Supplemental Objection (Doc. 143) be stricken because Plaintiff's arguments are immaterial, untimely, and redundant. Plaintiff's response to the Motion to Strike states that the supplement was timely under the mailbox rule and requests that the Court, "liberally construes this pleading because he is not a professional attorney." (Doc. 155). Plaintiff further argues that the supplement was necessary to provide relevant case law as the prison staff, "impeded and frustrated access to the relevant caselaw and authorities at the time Plaintiff filed his objection." (Doc. 155).

1

The Court will consider Plaintiff's Supplemental Objection (Doc. 144) and as such, Defendant's Motion to Strike (Doc. 151) is **DENIED**. However, Plaintiff's Second Supplemental Objection (Doc. 152) is deemed untimely pursuant to 28 U.S.C. § 636(b) and Local Rule 73.1(b) and is **STRICKEN**.

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. The Court has discretion to conduct a new hearing and may consider the record before the magistrate judge anew or receive any further evidence deemed necessary. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The Plaintiff has filed objections and the Court will review *de novo* those portions of the R & R to which objections have been filed.

A prisoner may not file a § 1983 suit "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 87-88 (2006). In order to satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a), a prisoner's grievance and appeal must be filed "in the place, and at the time, the prison's administrative rules require . . . [and] . . . contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (internal citation and quotations omitted); *see Woodford*, 548 U.S. at 90, 93 (requiring "proper exhaustion," that is, compliance with administrative deadlines and other critical procedural rules so the agency can address the issues on the merits). IDOC requires grievances to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and *the name of each person who is the subject of or who is otherwise involved in the complaint. . . .* [or] as much descriptive information about the individual as possible." 20 Ill. Admin. Code § 504.810(b) (2003) (emphasis added).

With regard to the first amendment retaliation claims against Tate and Freeman, and the Eighth Amendment claim against Tate individually, Plaintiff would have had to exhaust his administrative remedies on or before May 15, 2012 – the date his amended complaint was filed.

A review of Plaintiff's earliest possible grievances, that included these Defendants, indicate that an emergency grievance of March 31, 2012, alleges that Defendant Tate was identifying the Plaintiff to other prison staff for some unknown purpose.  The March 31, 2012, grievance was reviewed by the warden on April 6th, 2012, and determined not to be an emergency the same day.

Defendant Freeman is first mentioned in an emergency grievance dated April 16, 2012, stating that Defendant Freeman spoke to the Plaintiff in a threatening manner and attempted to provoke the Plaintiff into an altercation.  That grievance was reviewed by the warden on April 23, 2012, and determined not to be an emergency.

With regard to both grievance, after the warden declared the emergency grievances non-emergency, the Plaintiff should have appeal those decisions to the Administrative Review Board (ARB)(20 Ill. Adm. Code § 504.850), but failed to do so.  It is noted that the documentation provided by the ARB indicates that the Plaintiff did attempt to resubmit his March 31, 2012 grievance against Tate through the normal non-emergency process, but it was not received by the grievance officer until June 6, 2012.  As stated earlier, Plaintiff was required to exhaust his administrative remedies prior to May 15, 2012.

Plaintiff's objections state that he is being denied access to the law library and had difficulty obtaining pen and paper.  He argues that the grievance process is confusing and that there are no clear indications that he was required to submit the warden's decisions to the ARB.  Plaintiff argues that the warden should have responded within six days to his emergency

grievances and states that, although he may appeal to the ARB, there is nothing that requires him to appeal and as such, he had exhausted his administrative remedies. Further, he states that grievance officer made the remedy unavailable by holding on to the March 31, 2012 grievance for two months after it was resubmitted and by not responding at all to the April 16, 2012 grievance after it was resubmitted. It is Plaintiff's position that he made every reasonable effort to comply with the full administrative process that was available to him.

A prisoner plaintiff need only exhaust remedies that are "available" to him. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001). A remedy is deemed to be unavailable if prison officials fail to respond, or indefinitely delays a response, to inmate grievances and thereby prevent the progress of the grievance through the administrative remedy process. *Lewis*, 300 F.3d at 833; *see Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001).

The Court notes that 20 Ill. Adm. Code § 504.850 does not indicate the time in which the warden must respond to an emergency grievance and as noted in this Court's Order (Doc. 72), "IDOC's current emergency grievance procedure leaves an unacceptable grey area for inmates." This Court previously denied Defendants' Motion to Dismiss (Doc. 50) for Failure to Exhaust based on the Plaintiff's immediate fear for his life. However, since that time, Plaintiff has been transferred from the facility in which he alleges, in his Complaint, there was a threat for his safety. Further, the grievances with regard to Defendants Tate and Freeman (March 31, 2012 & April 16, 2012) are separate from the grievance (March 14, 2012) this Court address with regard to Defendants' Motion to Dismiss.

Although there is no statutory time requirement for the warden's response, 20 Ill. Adm. Code § 504.830(d) provides that the grievance officer shall report his or her findings to the Chief

Administrative Officer who shall advise the offender of the decision in writing within 2 months after receipt of the written grievance were reasonably feasible under the circumstances. The March 16, 2012 grievance was received by the grievance officer on April 5, 2012 and a written response was provided to the Plaintiff on June 5, 2012 – exactly at the two month requirement.

      The Court also notes that if the Plaintiff had submitted the March 16, 2012 grievance directly to the ARB - which is the normal procedure for an emergency grievance – 20 Ill. Adm. Code 504.850(f) allows the ARB six months, where reasonably feasible, to make a final determination. As such, it appears that the Plaintiff filed timely and sufficient emergency grievances with regard to Defendants Tate and Freeman, but then failed to file timely appeals.

      Plaintiff's Supplemental Objection (Doc. 144) repeats his prior objection stating that availability of the emergency grievances became unavailable because the warden took "unfair advantage of the process by not responding to the emergency grievance against Tate and Freeman . . . within 6 days" and by the delay of two months the grievance officer.

      Plaintiff further argues that Defendants Tate and Freeman fall under "special circumstances" since they were "part of the conspiracy to retaliate against him." (Doc. 144). He cites to a non-controlling case from the Second Circuit which held "special circumstance" that justified a failure to exhaust which included that the administrative remedies were unclear and that some of the defendants were estopped from asserting non-exhaustion because of fear of retaliation. *See, Hemphill v. State of New York*, 380 F.3d 680 (2nd Cir. 2004).

      District court decisions do not have *stare decisis* effect. "It may be a wise, well-reasoned decision that persuades by the quality of its reasoning, but in that respect it is no different from a persuasive article or treatise. *Midlock v. Apple Vacations W. Inc.*, 406 F.3d 453, 457-58 (7th Cir.

2005). Since the Plaintiff is *pro se* and has cited this case, the Court will consider its reasoning, but cautions the Plaintiff that this case is non-binding precedent.

The *Hemphill* matter involved the New York Department of Correctional Services ("DOCS") which provides a specific grievance process for inmates that feel they have been the victim of employee misconduct or harassment. *Supra,* at 682-683. The matter involved an inmate who was assaulted by prison staff and then threaten not to report the incident.[1] The Court pointed out "that threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison systems, or to external structures of authority such as state or federal courts." *Supra*, at 688.

The facts in *Hemphill* are quite distinguishable from the case before this Court. Plaintiff Merritte has never alleged that he has been physically assaulted by prison staff and then threatened harm if he reported it and/or filed a grievance. In fact, Plaintiff Merritte filed at least five grievances between January of 2012 and April 2012 and none of the grievance indicated that he had been physically. As such, the "special circumstance" provided for in *Hemphill*, do not apply.

Finally, Plaintiff argues that IDOC does not have a category with regard to "transfers" within the grievance process and as such, no remedy was available and he was not required to exhaust. A "transfer" is a form of relief. Exhaustion of administrative remedies applies to the "reason" the relief is requested (i.e. Transfer request due to threats from other inmates. Exhaustion would be required with regard to the threats from other inmates and if appropriate, the relief may (but is not required) be a transfer.) The Court notes that Offender's Grievance

---

[1] Summary of *Hemphill*'s allegations from this Complaint as stated within the fact and procedural history of the case. Hemphill v. State of New York, 380, F.3d 680, 683-385.

form (DOC 0046 (Rev. 3/2005) provides a portion of the form that states:  Relief Requested. Plaintiff appropriately placed his request for a transfer (along with other relief requested) within the appropriate portion of the grievance form.  Although an inmate may request transfer as a form of relief, the Court notes that other means of relief may be more appropriate.  The courts will ordinarily defer to the judgment of prison administrators on matters regarding prison management issues.  *See Overton v. Bazzetta,* 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them").  The Court also notes that the Plaintiff was transferred from the Lawrence Correctional Center to the Pinckneyville Correctional Center on October 8, 2014.

In summary, Plaintiff's Motions for Service of Process at Government Expense (Docs. 159 & 161) are **DENIED** as moot.  Defendant's Motion to Strike (Doc. 151) is **DENIED** and Plaintiff's Second Supplemental Objection (Doc. 152) is deemed untimely and is **STRICKEN**.

The Court hereby **ADOPTS** the Report and Recommendation in its entirety (Doc. 141) and **GRANTS** in part and **DENIES** in part Defendants' Motion (Doc. 114) for Summary Judgment. Defendants Tate and Freeman are **DISMISSED** with prejudice.  Count I will proceed against Defendants Kessel and Gangloff and Count III will proceed against Warden Speller.  The Clerk of Court is **DIRECTED** to enter judgment with regard to Defendants Tate and Freeman accordingly at the conclusion of this matter.

**IT IS SO ORDERED.**

**DATED:**  4/30/2015

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**